**FILED**
JAMES J. WALDRON, CLERK
November 10, 2015

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Juan Filgueiras, DEPUTY

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>KEITH BARKSDALE,<br><br>            Debtor. | Case No.:   13-25477 (VFP)<br><br>Chapter  7 |
| LEDGEMONT INTERNATIONAL MEDIA HOLDINGS LLC AND MEDIA ENTERTAINMENT COMMUNICATION HOLDING,<br><br>            Plaintiffs,<br><br>v.<br><br>KEITH BARKSDALE,<br><br>            Defendant. | Adv. Pro. No.: 13-2024 (VFP) |

**MEMORANDUM OPINION**

**APPEARANCES**

PORZIO BROMBERG & NEWMAN, PC
Warren J. Martin Jr. Esq.
Kelly D. Curtin, Esq.
100 Southgate Parkway
P.O. Box 1997
Morristown, NJ  07962
Counsel for Plaintiffs

SCOTT J. GOLDSTEIN, JR.
Law Offices of Scott J. Goldstein, LLC
280 West Main Street
Denville, NJ  07834
Counsel to Defendant, Keith Barksdale

**HONORABLE VINCENT F. PAPALIA, Bankruptcy Judge**

**I.    INTRODUCTION**

This matter comes before the Court on the Motion for Reconsideration filed by Debtor-defendant Keith Barksdale (the "Debtor"), under FED. R. BANKR. P. 9024, of the *Order Granting Motion of Ledgemont International Media Holdings, LLC, and Media Entertainment Communication Holding for (I) Relief from the Automatic Stay under 11 U.S.C. § 362 to Continue the Delaware Chancery Court Matter through to Judgment and/or (II) an Extension of the Discovery Deadline herein* entered on July 2, 2015 (the "Order") (Dkt. No. 19).[1] The Debtor timely filed the Motion for Reconsideration on July 7, 2015 (Dkt. No. 20) (the "Motion") under the local rule then in effect, D.N.J. LBR 9013-1(h), simultaneously with an appeal of the Order to the District Court. The Plaintiffs, Ledgemont International Media Holdings LLC and Media Entertainment Communication Holding (collectively, "Plaintiffs" or "Ledgemont"), filed an objection, and the Debtor, a reply. The Bankruptcy Court (the "Court") heard oral argument on the Motion on August 18, 2015. By letter dated August 21, 2015, the Court asked the parties to supplement the record by responding to four discrete questions that were raised by the Court at the hearing (Dkt. No. 29). The parties filed timely responses on September 15, 2015 (Dkt. No. 34, Plaintiff's response; Dkt. No. 35, Debtor's response).

**II.    JURISDICTIONAL STATEMENT**

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) and the Standing Orders of Reference entered by the United States District Court on July 10, 1984 and amended on October 17, 2013. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I) and (O). Venue is proper in this Court under 28 U.S.C. § 1408. The Court issues the following findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052. To the extent that any of the findings

---

[1] Docket numbers refer to entries in the captioned adversary proceeding unless otherwise stated.

of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

FED. R. BANKR. P. 8002(b)(1)(D) and (2) provide that a Motion filed under FED. R. BANKR. P. 9024 within fourteen (14) days of the entry of the targeted Order makes the Notice of Appeal of that Order effective when the Bankruptcy Court disposes of the Motion. The District Court docket indicates that on September 25, 2015, Debtor through counsel asked the District Court to stay the appeal until the Bankruptcy Court decides this Motion (Dist. Ct. Dkt. No. 5). The District Court entered an Order to that effect on September 29, 2015 (Dist. Ct. Dkt. No. 6), and the District Court has scheduled a telephonic status conference on the appeal for November 16, 2015.

For the reasons that follow, the Motion is denied.

### III.    FACTS AND PROCEDURE

The Debtor filed a voluntary Chapter 7 bankruptcy petition on July 15, 2013 at 9:40 p.m. (Main Dkt. No. 1). That filing stayed the trial of the Delaware Chancery Court Action entitled *Ledgemont International Media Holdings, LLC, et al v. Keith Barksdale, et al* (Dkt. No. CA 7563-VCL) (the "Delaware Action") that was fully pretried and set to begin the next morning, July 16, 2013.[2]    (Dkt. No. 12-2, Haney Cert., ¶ 11). Debtor scheduled Ledgemont as a general unsecured creditor for $3,500,000 with the legend "2012; Collection account," and did not schedule the debt as contingent, unliquidated or disputed (Main Dkt. No. 7, Schedule "F," p.1). Debtor did not initially schedule the Delaware Action on the Statement of Financial Affairs ("SoFA"), ¶ 4a, but amended his schedules to do so after Chapter 7 Trustee Robert B. Wasserman, Esq., conducted the § 341 meeting of creditors on August 19, 2013. (*Cf.* Main Dkt. No. 7, SoFA ¶ 4a, filed 7/29/13, and Main Dkt. No. 17, SoFA ¶ 4a, filed 8/19/13, with Main Dkt. No. 27,

---

[2] Trial was originally set for January 22-24, 2013, but delayed due to defendants' change in trial counsel. (Haney Cert., ¶ 6). Plaintiffs were awarded attorneys' fees and costs in the amount of $47,006.51 from Debtor and Ledgemont Global due to discovery violations and the resulting delay. *Id*. and Exs. D and E.

2

SoFA ¶ 4a, filed 9/5/13). On September 5, 2013, the Debtor filed an amended SoFA, ¶ 4a, to report the Delaware Action as "Pending" (Main Dkt. No. 27).

On October 18, 2013, Ledgemont filed a timely four-count adversary proceeding against the Debtor to except from discharge under 11 U.S.C. § 523(a)(2)(A), (2)(B), (4) or (6) Ledgemont's claim in the amount of $3,172,598.17 (the "523 Action"). The Debtor answered on January 6, 2014. The claims against the Debtor in the Delaware Action and the 523 Action are substantially similar, as both allege that the Debtor committed fraud, breach of fiduciary duty and conversion in operating Ledgemont Capital Group, LLC, ("LCG"), Ledgemont Asset Management, LLC ("LAM"), and Ledgemont Global Media Holding, LLC ("Ledgemont Global"). *Cf.* Delaware Complaint (Dkt. No. 12-2, Haney Cert., Ex. A) and 523 Complaint (Dkt No. 1). LCG, LAM and Ledgemont Global are all defendants in the Delaware Action, along with the Debtor and Edward Neugeboren. LCG and LAM are Chapter 7 Debtors whose cases are pending in the Bankruptcy Court for the District of Delaware.

The Trustee in this case filed a timely adversary complaint on October 17, 2014 under 11 U.S.C. §§ 727(a)(2), (4)(A), 544, 548, 550 to deny Debtor his discharge for concealing assets from the Trustee and to recover assets transferred between Debtor and his spouse (the "727 Action"). The Trustee ultimately settled the 727 Action with the Debtor and his spouse on April 24, 2015 for $163,975 paid by the Debtor to the Trustee with no denial of Debtor's discharge. (*See* Order Approving Settlement, Main Dkt. No. 103).

During the pendency of the Trustee's 727 Action, the Plaintiffs requested (with the Debtor's consent) that the pretrial conference and setting of discovery deadlines in the 523 Action be adjourned, as the resolution of the 727 Action by the Trustee would likely have a significant (and possibly dispositive) impact on the 523 Action. 6/23/15 Hr'g Tr. 11:4-13. The Court granted those requests. The consensual adjournments (totaling four in number) continued until November of 2014, when the Debtor objected to further adjournments. As a result, the Court conducted a

3

hearing and Ledgemont and Debtor entered into their first Joint Scheduling Order in the 523 Action on December 2, 2014, setting June 1, 2015 as the discovery end date and scheduling trial for August 21, 2015. (Dkt. No. 10). Plaintiff filed the Stay Relief Motion on May 29, 2015, after the resolution of the Trustee's adversary proceeding, and just before the discovery end date, to redirect the proceedings to the Delaware Chancery Court.

IV. **SUMMARY OF PAST AND PRESENT ARGUMENTS OF PARTIES**

In its Stay Relief Motion (Dkt. No. 12), Ledgemont relied on the Certification of Robert P. Haney, Esq., counsel to Ledgemont in the Delaware Action, dated May 29, 2015 ("Haney Cert."), for the history and status of the Delaware Action. Ledgemont argued in relevant part that the Bankruptcy Court should grant stay relief to allow the Delaware Action to continue through liquidation of damages because:

(1) the Delaware Action had been pending for fifteen (15) months, discovery had been taken and was complete, with numerous pretrial Orders entered, and the case was trial-ready;

(2) the claims against the Debtor in the Delaware Action and the 523 Action were substantially similar;

(3) no discovery had been taken in the 523 Action in New Jersey (Dkt. No. 12-2, Haney Cert., ¶ 21);

(4) discovery in the Delaware Action is subject to a Confidentiality Order which limited use of discovery material acquired in the Delaware Action to the Delaware Action (Dkt. No. 12, Brief of Warren J. Martin, Jr. Esq., ¶¶ 14-15 ("Martin Br."); and Haney Cert., Ex. C; and

(5) the Delaware Court had entered judgment against one of the allegedly Debtor-controlled defendant entities, but apparently had not entered judgment with respect to individual co-defendant Edward Neugeboren ("Mr. Neugeboren") out of concern that theories of liability against Mr. Neugeboren may impact the co-defendants, which included the Debtor and three entities which the Debtor allegedly owned or controlled and two of which had filed for bankruptcy in Delaware (Dkt. No. 12-2, Haney Cert., ¶ 14 and Ex. G, Transcript of July 18, 2013 hearing in Delaware Action, Honorable J. Travis Laster, Vice Chancellor) (7/18/13 Hr'g Tr. 727:23-728:19).[3]

---

[3] Judge Laster stated: "The case changed significantly when Mr. Barksdale declared bankruptcy just prior to trial. We went forward with the case, but I do think that it's important for us all now to think about what can happen in light of the automatic stay. Seems to me that Mr. Neugeboren has theoretical exposure for money that he took personally, then, theoretical exposure for money that Mr. Barksdale took for which Mr. Neugeboren would be held liable, either under some theory of secondary liability or, I guess theoretically, a fraud theory, or some other type of cause of action. To the extent any of these theories route their way through the debtor entities or Mr. Barksdale, it seems to me that

4

The Debtor, then *pro se* in this Bankruptcy Court, objected on the grounds that he was prejudiced by returning to Delaware, where he did not think he would get a fair trial, and would incur the cost of engaging new counsel, who would need to become familiar with the case. The Debtor further argued that the counsel whom he shared with Mr. Neugeboren had declared a conflict and could not represent him in the Delaware Action (Dkt. No. 14, p.2). However, as is noted below in more detail, the record on the Stay Relief Motion reflected that the Debtor's Delaware counsel advised the Delaware Court that the conflict issue had been resolved before trial was to begin in July of 2013.

Debtor also charged Ledgemont with delay in the Bankruptcy Case, pointing to the multiple consensual adjournments of the pretrial hearing (Dkt. No. 14, p.2). However, this Court finds that Ledgemont and the Debtor prudently delayed the prosecution of the 523 Action (with the approval of this Court) because the result of the Trustee's 727 Action might have mooted the 523 Action. The Court also finds that the Debtor's complaints about delay are at least inconsistent with his consent to the repeated adjournments of the 523 Action and the benefits he and Plaintiffs derived from those adjournments, both in terms of effort and expense.

Ledgemont's reply relied in part on the Supplemental Certification of Robert P. Haney, Esq. (Dkt. No. 15-1) ("Haney Supp. Cert."). Ledgemont advised that although Seth J. Reidenberg, Esq., Debtor's counsel, had reported a conflict to the Delaware Court shortly before the July 2013 trial, Mr. Neugeboren had executed a conflict waiver, so that Mr. Reidenberg was free to represent all the Delaware defendants and was ready for trial (Dkt. No. 15-1, Haney Supp. Cert., ¶¶ 3-6 and Exs. A-D; Notice of Appearance and correspondence from Mr. Reidenberg to Judge Laster).

---

we may, indeed, have a problem with the automatic stay" (Dkt. No. 12-2, Haney Cert., Ex. G, 7/18/13 Hr'g Tr., Judge Laster, 727:24-728:15). "It may well be . . . that the way to solve this whole problem is for us to wait until you go first to Bankruptcy Court and find out from the bankruptcy judge what the bankruptcy judge would like to do. I guess in this case, it's bankruptcy judges, since some of these entities are across the street [having filed in the District of Delaware] and Mr. Barksdale is in the District of New Jersey" (Dkt. No. 12-2, Haney Cert., Ex. G, 7/18/13 Hr'g Tr., Judge Laster, 731:12-19). The Delaware Action subsequently proceeded to trial against Mr. Neugeboren on July 16-18, 2013, but no judgment has been entered as of this date. (Dkt. No. 12-2, Haney Cert., ¶¶ 14-15).

5

Ledgemont, in support of its motion for relief from stay, emphasized the burden on the parties (particularly Ledgemont) of relitigating in Bankruptcy Court matters already litigated in the Delaware Action and the effect of the Delaware Confidentiality Order to hinder rather than to assist discovery in this Bankruptcy Court (Dkt. No. 15, Martin Reply, p.2).

Following oral argument on the Stay Relief Motion on June 23, 2015, the Court ruled on the record and granted stay relief to Ledgemont to continue the Delaware Action through entry of judgment. The Court based its decision on the established, twelve-factor standard set forth in *In re Mid-Atlantic Handling Sys., LLC*, 304 B.R. 111, 130 (D.N.J. Bankr. 2003) and *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2nd Cir. 1990) for determining when to grant relief from the automatic stay under 11 U.S.C. § 362(d)(1) to allow litigation to proceed in another court:

(1) whether relief would result in a partial or complete resolution of the issues;

(2) lack of any connection or interference with the bankruptcy case;

(3) whether the other proceeding involves the debtor as a fiduciary;

(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5) whether the debtor's insurer has assumed full responsibility for defending it;

(6) whether the action primarily involves third parties;

(7) whether litigation in another forum would prejudice the interests of other creditors;

(8) whether the judgment claim arising from the other action is subject to equitable subordination;

(9) whether the moving party's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10) the interests of judicial economy and the expeditious and economical resolution of litigation;

(11) whether the parties are ready for trial in the other proceeding; and

(12) impact of the stay on the parties and the balance of the harms.

*In re Mid-Atlantic Handling Sys., Inc.*, 304 B.R. 111, 130 (Bankr. D.N.J. 2003) (quoted, paragraphing added) (citing *In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 165 (Bankr. D. Conn. 2002); *accord In re Sonnax Indus., Inc.*, 907 F.2d. Cir. 1280, 1286 (2d Cir. 1990). "[A] court need not rely on any plurality of factors in deciding whether to lift the automatic stay." *In re Mid-Atlantic Handling Sys.*, 304 B.R. at 130.

On the record on June 23, 2015, the Court analyzed the following *Mid-Atlantic* factors and determined that, overall, they militated strongly in favor of stay relief in the context of this adversary proceeding and bankruptcy case:

> Factor 1 (partial or complete resolution of the issues): "The trial of the Delaware action will result in either a partial or complete resolution of the issues, depending on how it's decided. If it's decided in Mr. Barksdale's favor, then he would likely have a summary judgment or a motion to dismiss plaintiffs' complaint because the fraud that's alleged in that action will not have been proven." 6/23/15 Hr'g Tr. 22:25-23:5. "If, on the other hand, the plaintiffs are successful in providing the fraud claims, that would likely be res judicata and/or collateral estoppel as to the dischargeability claims in this court." 6/23/15 Hr'g Tr. 23:6-9. Thus, this factor favors stay relief.
>
> Factor 2 (lack of interference with bankruptcy case): "The [bankruptcy] case is really substantially complete except for this matter. So there's going to be no interference at all with the conduct of this [bankruptcy] case." 6/23/15 Hr'g Tr. 23:11-14. Again, this factor favors stay relief.
>
> Factor 3: "Whether the other proceeding involves the debtor [as] fiduciary, it's alleged that Mr. Barksdale had fiduciary duties and breached those duties in that case [the "Delaware Action"]." 6/23/15 Hr'g Tr. 23:10-16. This also favors stay relief.
>
> Factor 4 (specialized tribunal with necessary expertise): "Again, the Delaware Court which is familiar with the issues as a result of 15 months of pretrial proceedings and pretrial memos, exhibit lists and preparation for the trial, as well as the plaintiffs affirmative claims, as well as Mr. Barksdale's counterclaims as to which this Court would not have, at least would not have core jurisdiction as to the counterclaims, may have related to jurisdiction, but would not be able to enter final orders on any counterclaims. But that court is ready and as we learned today, has been inquiring as to the status of this case to determine whether and when it can proceed." 6/23/15 Hr'g Tr. 23:19-24:4. This favors stay relief.
>
> Factor 6: "Whether the action primarily involves third parties is really not applicable here because the matter was tried, defaults were entered against other defendants and all that remains are . . . Mr. Barksdale and, perhaps, the other debtor

entities in Delaware." 6/23/15 Hr'g Tr. 24:5-9. Further, the Debtor is a principal defendant in the Delaware Action. Thus, this factor also supports stay relief to the extent applicable.

Factor 7: "Whether the litigation in another forum would prejudice the interests of other creditors. [T]here would be no prejudice to any other creditors because this claim is principally against Mr. Barksdale and the two debtor entities with which he was involved." 6/23/15 Hr'g Tr. 24:10-14.

Factors 8 and 9: "The eighth factor about equitable subordination is not applicable. The ninth factor about judicial liens is not applicable." 6/23/15 Hr'g Tr. 24:15-17.

Factor 10 (judicial economy and expeditious and economical resolution of litigation): "There's several reasons this factor weighs heavily in favor of lifting the stay. As noted, the case was pretried for 15 months, was ready for trial. There's a confidentiality order that would have to be dealt with in this court in order to get the substantial discovery that has already been provided in the Delaware Court. There would possibly have to be other counsel retained by plaintiffs and as noted earlier, the resolution of the Delaware action will likely partially, or completely, resolve this proceeding as well." 6/23/15 Hr'g Tr. 24:23-25:7

Factor 11: "[W]hether the parties are ready for trial in the other proceeding. All representations are that they are ready, were about to proceed when the bankruptcy was filed. So that also counsels in favor of lifting the stay." 6/23/15 Hr'g Tr. 24:17-21.

Factor 12: "And the impact of the stay on the parties and the balance of harms. [T]his is the closest factor[s] as argued by Mr. Barksdale. He is correct that proceeding in Delaware might be a little bit more difficult for him in terms of logistics and preparation for whatever new trial is had. However, in balancing those harms, including the filing of the petition on the eve of that trial, the readiness of counsel to proceed with the trial, both from plaintiffs side and defendants side, at least according to the last information that we have, the inquiries of the Delaware Court as to the status, the familiarity of that court both with the pretrial proceedings and the confidentiality order and the need to address all those issues here, all tip the balance of [this] factor slightly in favor of the plaintiffs. But overall, *the factors tip decidedly in favor of granting stay relief* and this Court will grant that relief and stay this case pending the outcome of the Delaware action which I urge the parties to proceed with as expeditiously as possible. And that is without prejudice to your right, Mr. Barksdale, if the Delaware action is not moving, to ask this Court to proceed here because for whatever reason the Delaware Court is unable to proceed expeditiously." 6/23/15 Hr'g Tr. 25:8-26:4 (emphasis supplied).

On July 2, 2015, the Court entered the Order which granted Ledgemont stay relief to

proceed in Delaware Chancery Court "through to entry of final judgment but not for execution or

8

any further proceeding with respect to the judgment except upon further order of this Court" and stayed the adversary proceeding until further order of the Bankruptcy Court (Dkt. No. 19, ¶¶ 2-3).

The Debtor filed the instant Motion for Reconsideration (the "Motion") on July 7, 2015 simultaneously with a Notice of Appeal to District Court.[4] Debtor certified: (1) that Mr. Reidenberg was unwilling or unable (due to an asserted conflict) to represent the Debtor in the Delaware Action; and (2) that Mr. Reidenberg sought a $100,000 retainer to proceed (Dkt. 20-2, Certification of Debtor, ¶ 14-15) ("Debtor Cert.").[5] Debtor stated, and his emails as well as the June 24, 2015 email from Mr. Reidenberg corroborate, that Debtor elicited this information from Mr. Reidenberg immediately *after* the June 23, 2015 hearing on stay relief.

Debtor and his counsel argue that Mr. Reidenberg's declining to represent the Debtor in the Delaware Action constitutes "new evidence" which demonstrates that the Delaware Action is not trial ready and therefore undermines the Bankruptcy Court's decision, under the *Mid-Atlantic* factors, to grant stay relief in order to allow the case to proceed in Delaware (Dkt. No. 20-2, Debtor's Cert., ¶¶ 11-13; Dkt. No. 20-1, Brief of Scott J. Goldstein, Esq., pp. 5-6) ("Goldstein Br."). Debtor does not dispute that the Court's "reli[ance] on the balancing test set forth in" *Mid-Atlantic* was the correct test for stay relief (Dkt. No. 20-1, Goldstein Br., p.5).

With respect to the conflict issue, the Court notes that the undisputed record on the Stay Relief Motion indicates that this issue was resolved *before* the scheduled July 16, 2013 trial date

---

[4] Scott J. Goldstein, Esq., the Debtor's new attorney in this case, stated in his September 15, 2015 letter to the Court (discussed below) that, if the Motion for Reconsideration is denied, the Debtor will seek a stay pending appeal (Dkt. No. 35, Sept. 15, 2015 letter, p.2).

[5] The June 24, 2015 email from Mr. Reidenberg to the Debtor states in full:

> Keith: It does not appear that I was terminated from representing you before you filed for bankruptcy. However, I am not in a position to represent you going forward. First, I assume that the retainer agreement we had was terminated by the bankruptcy. Second, you owed the firm a great deal of money at the time of the filing and, as a result of the discharge, my firm was never paid. If I were to consider representing you now, I would need a retainer of $100,000 before I would perform any work. Third, it would take several months for me to prepare for a trial. I, therefore, must decline any future representation of you. I wish you luck going forward.

(Dkt. 20-3, Debtor Cert., Ex. B).

9

in the Delaware Action to the satisfaction of Debtor's Delaware counsel, Mr. Reidenberg. Mr. Reidenberg advised the Delaware Court that the Debtor's co-defendant had executed a conflict waiver and that he therefore "did not need to withdraw as counsel for Mr. Barksdale" and others. (Haney Supp. Cert., Reidenberg letters of June 18 and 20, 2013, Dkt. No. 15-1, Exs. C and D, respectively). In other words, Debtor's counsel was ready to proceed, but the trial was stayed by Mr. Barksdale's bankruptcy filing at 9:20 p.m. the prior evening.

In opposition, Ledgemont argued that the June 24, 2015 email from Mr. Reidenberg did not constitute "newly discovered evidence"; that a party cannot raise as newly discovered evidence for the purpose of reconsideration, information which it could, by its own diligence, have obtained before the original hearing; that this information does not in any event upset the Court's application of the *Mid-Atlantic* factors and the balancing of harms; and that Debtor was free to proceed *pro se* in Delaware as he had been in the adversary proceeding (Dkt. 26, Brief of Warren J. Martin, Jr., Esq., ¶¶ 15-18) ("Martin Br.").

The Court heard oral argument on the reconsideration motion on August 18, 2015. As a result of that hearing, the Court asked both Ledgemont and Debtor to respond to four (4) questions on or before September 15, 2015, as memorialized in a letter from the Court dated August 21, 2015 (Dkt. No. 29, the "August 21, 2015 Letter"):

(1) whether both parties consent to the "expansion of terms" of the Confidentiality Order to include the 523 Action in "Litigation" so as to allow the use of discovery obtained in the Delaware Action, still "subject to the terms of the Confidentiality Order . . . to the same extent and in the same manner [in the 523 Action], *without any further qualification or limitation of any kind*; and whether the parties consent to the use of discovery not subject to the Confidentiality Order but subject to the Rules of Evidence;

(2) what additional discovery the parties would need in the 523 Action;

(3) the status and result of Ledgemont's motion in the Delaware Action to fix a trial date; and

(4) whether the parties believed it would be useful for the Bankruptcy Court to confer with the Delaware Chancery Court to determine "where the claims against Mr. Barksdale can proceed most expeditiously and efficiently."

(Dkt. No. 29, August 21, 2015 Letter) (emphasis supplied).

Both Ledgemont and the Debtor responded by letter in a timely manner on September 15, 2015 to the Court's questions:

(1) Expansion of Confidentiality Order:

   a. Ledgemont consented to the expansion of the Confidentiality Order to include the 523 Action; but

      (i) deemed its consent insufficient unless the four (4) other Delaware Defendants consented; and

      (ii) asked the Bankruptcy Court, if the case were tried in Bankruptcy Court; to impose, in advance, on Debtor the types of discovery sanctions imposed upon him by the Delaware Court. The sanctions against Mr. Barksdale and the reasons for them are described at pp. 2-3 of the September 15, 2015 Martin Letter (Dkt. No. 34).

      (iii) Reiterated its arguments that there would still be significant ineffectiveness and prejudice if Ledgemont was not permitted to proceed with the trial of the Delaware Action.

   b. Debtor consented to the expansion of the Confidentiality Order to include the 523 Action.

(2) Additional discovery in the 523 Action:

   a. Ledgemont opined that no additional discovery is necessary, *provided that (i) the other Delaware defendants consent to the use of their discovery; and (ii) the Bankruptcy Court imposes pre-emptive discovery sanctions on Debtor*.

   b. Debtor stated that he was "not aware of" any other required discovery, *subject to his review of the Delaware discovery* (which this Court notes is available in the Delaware Action, but subject to the confidentiality restrictions that complicate its use in this Court).

(3) Status of the Delaware Action

   a. Ledgemont reported that on September 9, 2015, after the parties were unable to agree on a trial date, the Delaware Court **scheduled the trial for January 25, 26, 27, 2016.**

   b. Debtor reported that he would seek an adjournment of the January trial date as his Delaware counsel had "formally withdrawn" and Debtor's new counsel would need more time to prepare. However, the Delaware Court had already considered this issue and determined that the late January 2016 trial date

11

   provided Barksdale with sufficient time to either retain a new lawyer or prepare for trial to represent himself *pro se*. (9/15/15 Porzio Letter at p.2 and Ex. A, ¶ 9).

 (4) Whether the Bankruptcy Court should confer with the Delaware Court.

  a. Ledgemont did not believe it necessary in light of the trial dates scheduled for January 2016 but had no objection to such conference;

  b. Debtor took no position, believed that non-dischargeability should be decided in the bankruptcy court and believed that the "prior decision was based on the Court's lack of information at the time it was made."

(Dkt. No. 34, Ledgemont's 9/15/15 Letter; Dkt. No. 35, Debtor's 9/15/15 Letter). Based on the lack of consent of both parties, and the establishment of the new trial dates, this Court did not believe it necessary to consult with the Delaware Court.

## V. <u>STANDARD ON MOTION FOR RECONSIDERATION</u>

FED. R. BANKR. P. 9024 fully incorporates FED. R. CIV. P. 60 which provides in relevant part at R. 60(b)(1) and (6) that the Court may vacate an Order for (1) "mistake, inadvertence, surprise, or excusable neglect" or (6) "any other reason justifying relief." These clauses are mutually exclusive. *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 863 and n.11 (1988). D.N.J. LBR 9013-1(h) in effect when the Debtor filed the Motion also provided, "The motion shall be filed with a memorandum setting forth concisely the matters or controlling decisions which the movant believes constitute cause for reconsideration." D.N.J. LBR 9013-1(h) (deleted in revised local rules effective August 1, 2015). In applying this standard, the Court is guided by the following principles:

> A motion for reconsideration cannot be used as a "vehicle to reargue the motion *or to present evidence which should have been raised before.*" That is, a motion for reconsideration should not provide the parties with an opportunity for a "second bite at the apple." Further, the moving party must show more than "mere disagreement with the court's decision and recapitulation of the cases and arguments considered by the court before rendering its original decision[.]" A motion for reconsideration will only be granted if the moving party has provided the court with dispositive factual matters or

12

controlling decisions of law that were overlooked. A reconsideration motion is inappropriate to be used to reargue positions previously made or to otherwise ask the court to rethink issues already considered, rightly or wrongly. Finally, a motion for reconsideration is an extraordinary remedy that should be used "sparingly" and limited to exceptional circumstances.

*In re Patriot Contracting Corp.*, 2008 WL 934402, at *2 (Bankr. D.N.J. 2008) (emphasis supplied) (internal citations and quotations omitted).

## VI. LEGAL ANALYSIS

### A. The "Newly Discovered Evidence" Was Previously Available to Debtor

The "newly discovered evidence" on which the Debtor's motion hinges -- that his Delaware counsel was not willing to represent him, at least without a retainer of $100,000 -- was ascertainable by the Debtor before the June 23, 2015 hearing. In fact, the email attached as Exhibit B to Mr. Barksdale's Certification (Dkt. No. 20-3) is dated June 24, 2015 and reflects that he contacted Delaware counsel immediately after the June 23 hearing and received that response the very next day. As noted, a motion for reconsideration cannot be used as a "vehicle to . . . present evidence which should have been raised before." *In re Patriot Contracting Corp*., 2008 WL 934402 at *2 (Bank. D.N.J. 2008).

Additionally, as is acknowledged by the Debtor, "the failure to learn [of the newly discovered evidence] must not have been caused by a lack of diligence." (Del. Br., p.7). The Debtor could have easily obtained the information regarding the Delaware counsel's willingness to proceed before the Stay Relief Motion was heard. Thus, the Reconsideration Motion may be denied on this ground alone.[6]

### B. The "Newly Discovered Evidence" Does Not Warrant Reconsideration

---

[6] The Debtor also argues for the first time in his reply that a non-waivable conflict of interest existed with Delaware counsel. (*See* Reply Brief, Dkt. No. 28) at 4-5. The argument also could have been raised previously, but was not, and can similarly be overruled on that ground alone.

13

Even considering the "newly discovered evidence," the Court will not reconsider its decision. The Court based its prior decision on (among other things) the extensive pretrial proceedings in this Delaware Action, judicial economy and expertise, the lack of interference with the bankruptcy case, the readiness of the Delaware Court to proceed with trial, and the apparent absence of any debilitating conflict on the part of Mr. Barksdale's Delaware counsel in continuing to proceed with the Delaware trial, based on the uncontroverted correspondence from Delaware counsel cited above. In this respect, it is accurate that the Court also believed that counsel for both sides were ready to proceed with trial. That is apparently no longer the case as Mr. Barksdale's counsel has indicated that he will not be able to proceed without $100,000 retainer (a situation which the Court notes could be remedied if, for example, Mr. Barksdale were able to negotiate a lower retainer with his old firm or a different one).[7]

The readiness of counsel for both sides was, however, only *one* of the matters the Court considered in determining *one* of the *twelve* factors under the *Mid-Atlantic* analysis -- the impact of the stay and the balancing of harms to the parties (factor 12). In considering this factor, the Court did recognize that it may be "a little bit more difficult for [Mr. Barksdale to proceed in Delaware] in terms of logistics and preparation for whatever new trial is had." The Court did not, however, believe or assume that Mr. Barksdale's Delaware counsel would proceed without being paid or asking for a retainer. To the contrary, the Court believed then and believes now that *any* counsel retained by Mr. Barksdale, either in this Court or in Delaware, would be likely to require a retainer to represent him at trial in either the Delaware Action or the 523 Action before this Court. Thus, the retention of new counsel is not an impossibility, but rather one of the difficulties that Mr. Barksdale may encounter in proceeding with the Delaware Action.

---

[7] The Court also notes that Mr. Barksdale has demonstrated no hesitance to utilize different counsel in this case (Mr. Goldstein is the second attorney who has appeared here), or in the Delaware Action, where Mr. Barksdale apparently changed attorneys on more than one occasion with a resulting delay in trial (Dkt. No. 34, Martin letter, Aug. 21, 2015, Ex. C, 5/14/13 Del. Hr'g Tr. 36:18-19 (The Court: "We've had a succession of counsel that have had to withdraw")).

14

Those difficulties are ameliorated or answered by several factors. First, Mr. Barksdale appeared *pro se* on the original lift stay motion and indicated that he would continue to proceed *pro se* in the adversary proceeding. (6/23/15 Hr'g Tr., 2:12-3:2 and 17:21-18:1). He could, of course, also proceed *pro se* in the Delaware Action, which will involve precisely identical plaintiffs, the same or substantially similar discovery and evidence and very similar legal and factual issues. Second, Mr. Barksdale could retain other counsel, as he has done here in New Jersey, and as he did previously in the Delaware Action. Third, his newly retained New Jersey counsel could also represent him in the Delaware Action, with *pro hac vice* admission and the assistance of local counsel. New counsel is apparently ready to represent Mr. Barksdale here in New Jersey on substantially similar claims and therefore could also do so in Delaware.

Additionally, Plaintiffs argue that they will be prejudiced by proceeding here against Mr. Barksdale because this Court's judgment would not have preclusive effect on his co-defendant, Mr. Neugeboren, as he would not be a party to the 523 Action, but is a party to the Delaware Action. Martin Letter (Dkt. No. 34, p.2). As a result, if the case is tried here, Plaintiffs would have to return to the Delaware Court for final relief to be granted in any event. This is another inefficiency that counsels in favor of stay relief.

Finally, as noted above, the balance of harms was only one of the factors considered by this Court's granting stay relief. While it is true that the Court found this single factor to be the "closest one" (though still in favor of Plaintiffs), the Court also found that *each* of the other factors in the *Mid-Atlantic* analysis tipped "decidedly in favor of stay relief." (6/23/15 Hr'g Tr., 25:21-22).

In balancing those harms and considering the current unavailability of the Debtor's former Delaware counsel, this Court reaffirms its determination that the difficulties that Mr. Barksdale will face in proceeding with the Delaware Action do make this factor the "closest one," but still slightly in favor of Plaintiffs, for all the reasons previously stated. Further, as was also noted, this

15

single factor is not dispositive and the other *Mid-Atlantic* factors -- which were not directly or indirectly addressed by the Debtor -- still weigh heavily in favor of Plaintiffs and relief from the automatic stay.

As to the other *Mid-Atlantic* factors, nothing has changed -- with one significant exception. The Delaware Court has set trial dates for late January 2016. In doing so, the Delaware Court specifically noted that these new dates will allow either new counsel and/or Mr. Barksdale (if proceeding *pro se*) sufficient time to prepare for trial. *See* Martin Letter (Dkt. No. 34, p.2). The fact that new trial dates have been set further confirms that the Delaware Court is the most efficient and effective forum to expeditiously resolve Plaintiff's fraud, breach of fiduciary duty and conversion claims against the Debtor and is another factor that supports stay relief. *See, e.g.*, *In re The SCO Group*, 395 B.R. 852, 859-60 (Bankr. D. Del. 2007) (judicial economy favored lifting the stay based on specialized knowledge developed by District Court in presiding over case four years and case was ready for trial); *In re Mid-Atlantic Handling Sys., LLC,* 304 B.R. at 130-31 (applying similar reasoning in lifting stay). Thus, there is no basis for the Court to reconsider its prior decision.[8]

## VII.    CONCLUSION

For the foregoing reasons, the Motion for Reconsideration is denied, with consideration of the "newly discovered evidence." A separate Order accompanies this Opinion.

|  |  |
|---|---|
| Dated: November 10, 2015 | __/s/Vincent V. Papalia_____<br>VINCENT F. PAPALIA<br>United States Bankruptcy Judge |

---

[8] Debtor also argues that the Delaware Court is not ready to proceed. (Debtor Br., Dkt. 20, p.8). That is plainly not the case because, as noted above, the Delaware Court has set trial dates for late January 2016. Thus, this argument is rejected.